FILED
2011 Oct-04  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MICHAEL GALLOWAY,                )

    PLAINTIFF,                )

VS.                )                2:10-cv-936-JHH

ALETHEIA HOUSE, INC.                )

    DEFENDANT.                )

## MEMORANDUM OF DECISION

The court has before it the July 28, 2011 Motion (Doc. #14) of Defendant Aletheia House, Inc. for Summary Judgment.  Pursuant to the court's July 29, 2011 and August 17, 2011 orders  (Doc. #17 & 18), the Motion (Doc. #14) was deemed submitted to the court for review, without oral argument, on September 9, 2011.

## I.    Procedural History

Plaintiff Michael Galloway commenced this action by filing a Complaint in this court on April 9, 2010, alleging that Defendant Aletheia House, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, by refusing to hire him as a Case Manager and failing to provide him with  reasonable accommodations for

1

his disability.  (*See* Compl. ¶¶ 17-23.)  Defendant's July 28, 2011 Motion (Doc. #14) for Summary Judgment asserts that it is entitled to summary judgment because there is no genuine issue of material fact and that Aletheia House is entitled to judgment as a matter of law on all claims asserted by Plaintiff.  (Doc. #14.)

On July 28, 2011, Defendant filed a brief (Doc. #15) and evidence [1] (Doc. #16) in support of its Motion for Summary Judgment.  Plaintiff filed a response (Doc. #19) and evidence[2] (Doc. #20) in opposition to the Motion on August 26, 2011.  Defendant filed a reply brief (Doc. #22)[3] and evidence[4] to Plaintiff's opposition on September 9, 2011.

---

[1] Defendant submitted the following evidence: deposition of Plaintiff with attached exhibits; deposition of Cathy Galloway with attached exhibits; deposition of Gloria Howard with attached exhibits; affidavit of Gloria Howard; affidavit of Denise Belser; and Plaintiff's Response to Defendant's First Interrogatories.

[2] Plaintiff submitted the following evidence in opposition: declaration of Michael Galloway; Birmingham News Ad for Veteran Case Manager; Galloway cover letter and resume; breakdown of positions funded by the Job One Grant; excerpts of deposition of Gloria Howard; Galloway application for Substance Abuse position; Galloway EEOC charge; Howard EEOC response; EEOC Cause finding; EEOC case log; EEOC Intake Questionnaire; Galloway letters of reference; Substance Abuse counselor ad; Galloway letter to EEOC.

[3] Defendant first filed a reply brief on September 8, 2011 (Doc. # 21), but that brief did not comply with the page limitation set by the court in its submission order. (Doc. # 17). Defendant realized its error, however, and filed a revised brief, complying with the page limitations, on September 9, 2011.  The court did not consider the brief filed on September 8, 2011.  (Doc. #21).

[4] Defendant submitted the following evidence in reply: Defendant's Response to Plaintiff's First Interrogatories and Requests for Production of Documents.  The court notes that Plaintiff did not file a motion to strike this evidence.

2

## II.   Standards for Evaluating a Summary Judgment Motion[5]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are

---

[5]  Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56 advisory committee's note (2010 Amendments).

resolved in favor of the nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that

4

the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

III.    **Relevant Undisputed Facts**[6]

Aletheia House is a non-profit agency that provides substance abuse treatment and prevention services to low-income individuals. (Howard Dep. at 7, 97.) Aletheia House also provides its clients with services other than substance abuse treatment, in furtherance of its goal to empower its clients with skills and values necessary to be responsible for their own well-being. (Howard Dep. at 7; *see also* http://specialkindofcaring.org/about.) For example, Aletheia House provides employment services and affordable housing. (Howard Dep. at 7.)

In May 2007, Aletheia House submitted a grant application to the United States Department of Labor requesting funds for a program that would provide employment, training, and supportive services to homeless veterans in the Birmingham area. (Howard Aff. ¶ 3.) Aletheia House referred to this program as "Job One." (Exh. A to Howard Aff; Howard Dep. at 49.) The Department of Labor awarded the grant to Aletheia House in July 2007, and the grant expired in June 2010. (Howard Aff. ¶ 4; Howard Dep. at 43-44, 53, 89.) The Job One program services approximately 200 homeless veterans per year. (Howard Dep. at 26.)

As part of the Job One program (as well as other programs), Aletheia House

---

[6] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. *See Fitzpatrick*, 2 F.3d at 1115.

employed Case Managers.  Case Managers are advocates for the clients of Aletheia

House and serve as liaisons between clients and other social service agencies, the

criminal justice system, and employers.  (*Id.* at 27, 109.)  Case Managers assigned to

the Job One Program drive every day, transporting and accompanying clients to and

from appointments and helping them become employable.[7]  (*Id.* at 23, 27, 72-73;

Belser Aff. ¶¶ 6-7; Exh. 4 to Galloway Dep.)  In fact, driving is one of the most

important functions of a Job One Case Manager, with approximately 5 to 6 hours

behind the wheel each day.  (*Id.*; *see also* Howard Aff. ¶ 5; Exhs. C & D to Howard

Aff.)

In July 2008, Aletheia House posted a job announcement in *The Birmingham

News* seeking a Case Manager "to help homeless vets get jobs and supportive

services."  (Exh. 2 to Galloway Dep.)  Galloway, who is legally blind, submitted a

cover letter and resume in response to the job announcement.  (Galloway Dep. at 78.

83.)  Galloway has over twenty years experience in the social work field providing

counseling for persons with substance abuse and other mental health problems.

---

[7]For example, Case Managers drive clients to job interviews and to meetings with
attorneys or probation officers.  (Howard Dep. at 16, 18; Belser Aff. ¶ 6.)  Case Managers also
drive clients to the Social Security Administration office to get Social Security cards, to the
courthouse to get drivers' licenses or identification cards, to medical appointments, to secure
housing, to obtain food stamps, and to obtain appropriate clothing or other tools that may be
needed for work.  (Howard Dep. at 18, 51, 67-68; Belser Aff. ¶ 6; *see also* Exh. A to Howard
Aff.)

(Galloway Decl. ¶ 1; Pl. Exh. 3.)  He does not have a driver's license and uses a driver to get wherever he needs to go.  (Galloway Dep. at 23.)

Aletheia House contacted Galloway a few weeks later and scheduled an interview for August 21, 2008.  (*Id.* at 93, 97-98.)  Galloway arrived at his interview accompanied by his wife.  (*Id.* at 98.)  Upon arrival, Galloway informed the receptionist that he was there for an interview for a Case Manager position, and the receptionist gave Galloway an application to complete.  (*Id.* at 102-103.)  Galloway's wife began completing the application for him.  (*Id.* at 103, 108; C. Galloway Dep. at 17-18.)  According to Galloway, when the receptionist observed his wife completing the application, she "yelled" and instructed Galloway that he had to complete the application himself.  (Galloway Dep. at 103-05, 108.)  Galloway told the receptionist that he "couldn't see well" and needed his wife's assistance in completing the application.  (*Id.*)  Galloway testified that the receptionist then stated that he had "to be able to see to work here" and that he had "to be able to see to do the notes."  (*Id.* at 105, 108; C. Galloway Dep. at 19-20.)

The receptionist then left and returned with Nicole Walden, the Director of Men's Services.  (Galloway Dep. at 109; C. Galloway Dep. at 21; Howard Dep. at 12.)  Walden explained that the Case Manager position required driving clients to appointments and that Case Managers "spend approximately 50% of their time

driving clients around in a van." (C. Galloway Dep. at 4546; Exh. 4 to Galloway Dep; Galloway Dep. at 128-30.) At this point, Galloway asked to speak to a supervisor. (Galloway Dep. at 109-10; C. Galloway Dep. at 24-25.)

Galloway and his wife then met with Gloria Howard, Chief Operating Officer and Clinical Director at the Aletheia House. (Galloway Dep. at 110; C. Galloway Dep. at 26-27; Howard Dep. at 8.) Galloway recounted what happened in the receptionist area. (Galloway Dep. at 111; C. Galloway Dep. at 29-30.) Howard explained to Galloway that one of the primary job duties of a Case Manager was to transport clients to and from appointments. (Galloway Dep. at 111; Howard Dep. at 17-18.) Galloway suggested that he could supply his own driver, including hiring his wife, to drive in his place. (Galloway Dep. at 111-12, 125, 133; C. Galloway Dep. at 30-31.) Howard explained in response that it was not possible to have a driver because of concerns about confidentiality and privacy of the Aletheia House clients. (Galloway Dep. at 112, 119-20, 125, 133; C. Galloway Dep. at 31-34; Howard Dep. at 18-19.)

At that point, Galloway asked Howard for a job description. (C. Galloway Dep. at 38.) Howard provided a job description that was similar to the Case Manager job description. (Id. at 39-41.) Galloway then left the Aletheia House and went immediately to the EEOC office and filed a charge of discrimination. (Galloway Dep.

at 101-02, 112.)

Thirteen days after his failed interview for the Case Manager position, on September 3, 2008, Galloway applied for a second position with the Aletheia House as a Substance Abuse Counselor. (Pl. Exh. 6.) Additionally, that same day, he applied for an Evening Outpatient Substance Abuse Counselor position in Jasper. (Pl. Exh. 10.) Driving is not an essential function of the position of Evening Outpatient Substance Abuse Counselor. (Howard Dep. at 37.) There is no evidence in the record to indicate whether Galloway was considered for that position. (*See id.*) Galloway told the EEOC investigator, however, that he would be willing to accept the substance abuse counselor position as a resolution of the matter. (*See* Pl. Exh. 14.)

## IV.   Applicable Substantive Law and Analysis

Plaintiff's Complaint alleges that Aletheia House discriminated against him by failing to hire him and by failing to make reasonable accommodation of his disability of blindness under the ADA. (*See generally* Compl., Count I.) In its motion and brief in support of summary judgment, Aletheia House argues that Plaintiff cannot establish a prima facie case of disability discrimination because he is not a "qualified individual with a disability" because driving is an essential function of the Case Manager position and Plaintiff could not perform this essential function of driving

10

with or without a reasonable accommodation.  (Doc. #15 at 9-16.)  In response, Plaintiff contends that he presented direct evidence of discrimination and that reasonable accommodations existed.  (Doc. #19 at 9-19.)  The court addresses the arguments of the parties below, but first gives an overall framework for analysis under the ADA.

### A.      Basics of the Americans with Disabilities Act

As federal courts have repeatedly recognized, the general purpose of the ADA is to eradicate discrimination against persons with disabilities and to ensure equal treatment. *See* 29 C.F.R. § 1630.1(a) (1999).  In the employment context, the ADA was created to provide "qualified" employees protection from discrimination based on their known or perceived disabilities. *See* 42 U.S.C. § 12112(a) (1991). The Eleventh Circuit has explained that the ADA's sole and express purpose is to provide equal, not preferential, opportunities to disabled persons. *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998).  Discrimination under the ADA includes refusing to hire an individual because of his disability and not providing reasonable accommodations to a disabled employee. *See* 42 U.S.C. § 1211(a) & (b)(5).

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a).

11

In every ADA employment discrimination case, the plaintiff must demonstrate the defendant's discriminatory motive. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977) (noting in the Title VII context that "[p]roof of discriminatory motive is critical, though it can in some situations be inferred from the mere fact of differences in treatment"). When establishing the proscribed motive, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

To establish a case of intentional discrimination in violation of the ADA, a plaintiff may rely on direct or circumstantial evidence, and the type of evidence before the court dramatically affects the allocation of evidentiary burdens.  If direct evidence of discrimination exists, the familiar framework for establishing a prima facie case based on circumstantial evidence and the alternating burdens of production and proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply.  *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The Eleventh Circuit has explained the difference between cases involving direct evidence and cases involving circumstantial evidence:

> The *McDonnell Douglas* analysis is intended progressively to sharpen inquiry into the elusive factual question of intentional discrimination, where the plaintiff's case is

made out with circumstantial evidence supporting the
inference of discrimination. Where a case of discrimination
is made out by direct evidence, reliance on the four-part
test developed for circumstantial evidence is obviously
unnecessary.

Moreover, where a case for discrimination is proved
by direct evidence it is incorrect to rely on a *McDonnell
Douglas* form of rebuttal. . . .  Where the evidence . . .
consists . . . of direct testimony that defendants acted with
a discriminatory motivation, if the trier of fact believes the
. . . evidence the ultimate issue of discrimination is proved;
no inference is required. . . .  Once an unconstitutional
motive is proved to have been a significant or substantial
factor in an employment decision, defendant can rebut only
by proving by a preponderance of the evidence that the
same decision would have been reached even absent the
presence of that factor.

*Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773-74 (11th Cir. 1982) (footnotes,

alteration, quotation marks, and citations omitted). Thus, a finding that direct

evidence of discrimination exists, standing alone, is normally sufficient to defeat a

motion for summary judgment. *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d

1321, 1323 n.11 (11th Cir. 1998). Accordingly, the court must make a threshold

determination as to whether the evidence produced by Galloway is direct or

circumstantial.

### B.    Direct Evidence of Discrimination

"Direct evidence" of disability-based discrimination is "evidence, which if

believed, proves [the] existence of [the] fact in issue without inference or presumption. . . . Evidence that only suggests discrimination, . . . or that is subject to more than one interpretation, . . . does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations omitted); *cf. Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (likewise explaining that direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without interference of presumption"). Thus, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

Despite Galloway's contention otherwise, he does not submit direct evidence of ADA discrimination. The alleged comments made by the receptionist to Galloway that "you have to be able to see to work here" does not amount to direct evidence for one simple reason - she was not a decisionmaker. "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Bd. of Trustees of the Univ. of Ala.*, 91 F.3d 1449, 1453-54 (11th Cir. 1996), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Standard v. A.B.E.L. Servs., Inc*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of

14

discrimination."). There is no evidence before the court that the receptionist played any role in the decision not to hire Galloway. Therefore, the alleged statement is not direct evidence of discrimination.

Plaintiff also contends that the fact that Aletheia House "barr[ed] him from completing the employment application once the hiring personnel realized he was visually impaired reflects an intent to discriminate." (Doc. #19 at 12.)   This argument is not evidence of intentional discrimination.   It makes too many assumptions and is much more akin to circumstantial evidence.  Simply put it does not "prove[] [the] existence of [a] fact without interference of presumption." *Morris*, 402 F.3d at 1081.  Because Plaintiff failed to establish intentional discrimination using direct evidence, he must continue under the circumstantial method of proof, which is discussed below.

## C.    Circumstantial Evidence of Discrimination

To establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) he is disabled; (2) he was a qualified individual at the relevant time; and (3) he was discriminated against because of his disability.  *See Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation,

can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability – unless doing so would impose undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); *see also Lucas*, 257 F.3d at 1255.  "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions." *Lucas*, 257 F.3d at 1255-56; *see also Earl v. Mervyn's, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).  The ADA does not require any and all possible accommodations, and a disabled employee is not necessarily entitled to his first choice of accommodations. *Id.* at 1285-86.  Rather, only "reasonable accommodations" are required by the ADA; an accommodation is not reasonable if it imposes an undue hardship on the employer. See 42 U.S.C. § 12112(b)(5)(A).

Defendant contends that Plaintiff's claims fail as a matter of law because he is not a qualified individual with a disability.  More specifically, Defendant argues that driving is an essential function of the Case Manager position and that Plaintiff could not perform the essential function of driving with or without a reasonable

accommodation.  (Doc. #15 at 9-16.)  Although Plaintiff does not dispute that driving is an essential function of the Case Manager position[8] (*see generally* Doc. #19), he contends that reasonable accommodations existed that would have allowed him to perform the Case Manager position.  (*Id.* at 12-19.)  Galloway identifies the following three possible accommodations: (1) allowing him to provide a driver at his own expense; (2) allowing him to use public transportation or "ride share" to transport clients; or (3) "reassigning" him to the Evening Outpatient Counselor position.  None of these possible accommodations, however, constitute a "reasonable accommodation" under the ADA.[9]

Plaintiff's first suggested accommodation - that he hire a driver (at his own expense) to transport clients - is not reasonable under the ADA because such an accommodation would leave Galloway unable to perform the essential functions of the job himself.[10]  A defendant in not required to reallocate essential functions, such

---

[8] The court notes that Plaintiff does not address the argument made by Aletheia House that driving is an essential function of the job for a Case Manager in his brief in opposition to summary judgment.  The court, therefore, assumes that he concedes this point.

[9] Galloway also contends that Aletheia House did not engage in the "interactive process." (Doc. #19 at 13-14.)  Even if the evidence supported Galloway's contention (and the court does not decide that it does), failure to engage in the interactive process is not a violation of the ADA because no reasonable accommodation existed.  *See McKane v. UBS Financial Servs. Inc.*, 393 Fed. Appx. 679, 681-82 (11th Cir. Jan. 21, 2010) (unpublished).

[10] Additionally, such an accommodation was not reasonable because it would have breached the confidentiality of the clients of Aletheia House.  (Howard Dep. at 18-19, 35.)  Howard testified that as a substance abuse facility, Aletheia House is subject to federal laws

as the function of driving in this case.  *See* 29 C.F.R. Pt. 1630, App. § 1630.2(o) at

407 (1995) (citation omitted) ("An employer . . . is not required to reallocate essential

functions. . . . For example, suppose a security guard position requires the individual

who holds the job to inspect identification cards. An employer would not have to

provide an individual who is legally blind with an assistant to look at the

identification cards for the legally blind employee."); *Holbrook v. City of Alpharetta,*

*Ga.*, 112 F.3d 1522, 1527-28 (11th Cir. 1997) (employer not required to reshuffle

case assignments for visually impaired police officer because ADA does not require

reallocation of essential job functions); *Treadwell v. Alexander*, 707 F.2d 473, 478

(11th Cir. 1983)("[C]ourts have universally found that employers are not required to

assign existing employees or hire new employees to perform certain functions or

duties of a disabled employee's job which the employee cannot perform by virtue of

---

requiring strict patient confidentiality.  (*Id.* at 64-65.)  Violation of the confidentiality
requirements could result in the imposition of fines against Aletheia House and possible loss of
agency certification. (*Id.* at 97-98, 105). Aletheia House requires all employees to sign
confidentiality agreements (*id.* at 30-31, 65), provides employees with training on the
confidentiality requirements every quarter (*id*. at 65), and disciplines employees for any violation
of the confidentiality requirements. (*Id*. at 32).

     Allowing Plaintiff to hire someone not employed by, or otherwise accountable to,
Aletheia House would not comply with the confidentiality requirements. (*Id*. at 18-20, 34-35).
For instance, one of the requirements prohibits disclosing an identifying information, but having
a driver "would mean face-to-face [interaction, and] would certainly be identifying information
to a person who is not employed by the agency, therefore, it leaves it vulnerable to be in violation
of that statute."  (*Id.* at 63-64.)  In addition, Aletheia House would lack any authority over a
driver employed by Plaintiff and thus could not ensure that the driver was complying with
Aletheia House policies, including confidentiality requirements. (*Id.* at 34.)

his disability.").   In short, the ADA does not require Aletheia House to allow Galloway to hire a driver to transport him and Aletheia House clients.

Second, Galloway suggests a "ride share"[11] or public transportation as a reasonable accommodation.   (Doc. #19 at 14, 17.)   Galloway, however, never suggested this possible accommodation to Aletheia House, but instead presents it for the first time in his opposition brief.   An after-the-fact request for an accommodation is simply too late:

> The essence of the ADA claim is discrimination in the work place, which means while the employee is on the job. Hence, the employee must show that he requested a reasonable accommodation while on the job (or that the adaptation constituting the suggested accommodation was reasonably apparent) but the employer simply refused to make that accommodation, thereby discriminating against the employee at the time. Without this requirement the employee could casually mention a claimed disability, say nothing, wait to be terminated, then think up new suggested accommodations years later while in the midst of ADA litigation. This would unfairly subject the employer to a "retro-discrimination" standard, where the employer "should have thought of" the accommodation at the time even if the employee did not.

*Fussell v. Ga. Ports Auth.*, 906 F. Supp. 1561, 1570 (S.D.Ga. 1995) ("In other words, it is simply too late to raise suggested accommodations two years later in a summary

---

[11] The court is unclear as to what Plaintiff means by "ride share" and he does not explain it in his brief.  (Doc. #19 at 17.)  Defendants were, likewise, at a loss when it came to the possible accommodation.  (Doc. #22 at 7.)

judgment response brief.")

Even if this possible accommodation had been timely suggested, it is still not "reasonable" as a matter of law under the ADA for the reasons already discussed. The ADA does not require an employer to reallocate essential job functions to anyone else. *See* 29 C.F.R. Part 1630, App. § 1630.2(o). Moreover, public transportation in Birmingham, Alabama is inadequate for the functions needed for the Case Manager position. Public transportation in Birmingham is known to be "one of the worst in the nation" and it does not reach many places where the clients of the Aletheia House must travel to secure jobs. (*See* Exh. A to Howard Aff.)

Finally, Aletheia House was not required to "reassign" Galloway to the Evening Outpatient Counselor position as a reasonable accommodation. The main reason for this is because reassignment as a reasonable accommodation is available to <u>current employees</u>, not applicants for employment:

> Reassignment to a vacant position is . . . a potential reasonable accommodation. In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship. Reassignment is not available to applicants. An applicant for a position must be qualified for, and be able to perform the essential functions of, the position sought with or without a reasonable accommodation.

29 C.F.R. Part 1630, Appx. § 1630.2(o). The second reason is because the Evening

Outpatient Counselor position was not vacant when Galloway requested an accommodation.  The position became vacant on August 31, 2008, ten days after Galloway was told that he was not qualified for the Case Manager position, and ten days after he filed his charge of discrimination with the EEOC.

Because Galloway has not shown that with a reasonable accommodation he can perform the essential duties of a Case Manager, he is not a qualified individual with a disability, as defined by the ADA.  Therefore, Plaintiff has failed to establish a prima facie case of discrimination, and summary judgment in favor of Aletheia House is due to be granted.

## V.   Conclusion

In summary, the court finds that no material issue of fact remains and that Defendant Aletheia House, Inc. is entitled to judgment as a matter of law as to all claims asserted by Plaintiff.  A separate order will be entered.

**DONE** this the ___4th___ day of October, 2011.

_James W. Hancock_
_____
SENIOR UNITED STATES DISTRICT JUDGE

21